UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ANTHONY D. MOORE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) CAUSE NO. 3:16-CV-419 JD |
| | ) |
| WARDEN[1], | ) |
| | ) |
| Respondent. | ) |

OPINION AND ORDER

Anthony D. Moore, a *pro se* prisoner, filed a habeas corpus petition under 28 U.S.C. § 2254 challenging his murder conviction and 55 year sentence imposed by the Lake County Superior Court on May 17, 2011, under cause number 45G-02-0910-MR-8. ECF 1.

I. BACKGROUND

In deciding the petition, the court must presume the facts set forth by the state courts are correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Here, Moore does not dispute the Court of Appeals of Indiana's summary of the evidence presented at trial:

> On October 16, 2009, Dorelle-Moore returned to his Gary, Indiana residence and discovered that it had been burglarized. He contacted his girlfriend, Carla Dawson ("Dawson"), who came home from work and called the Gary Police Department.

---

[1]The Respondent's name was changed from Superintendent to Warden pursuant to Indiana Code § 11-8-2-7.

> Dorelle-Moore began to voice his suspicions that Isaiah Claxton ("Claxton"), Bernard Hamilton ("Hamilton"), and Chris Martin ("Martin") were the burglars. He went to the home of Martin's cousin, making an offer that "everything will go away" if Martin and his companions would return the stolen items. Dorelle-Moore went back home to wait for the police to arrive, and Claxton came to the residence to buy marijuana.
>
> Claxton waited on the living room sofa while Dorelle-Moore paced back and forth, in and out of the residence, talking with some men on the porch, and becoming more and more agitated. At one point, Claxton attempted to leave but Dorelle-Moore's friend asserted that this made Claxton "look guilty." Dorelle-Moore went into another room, talked with a friend, and returned with a gun. He then fired nine shots into Claxton, saying "over kill, bitch."
>
> Claxton's sister and friend were attempting to reach Dorelle-Moore on his cell phone when they overheard shots. Dorelle-Moore answered the cell phone and said, "This bitch ass ----- want to steal from me. Now he laying down." Dorelle-Moore went outside, still holding his weapon and left his vehicle. Claxton died in the doorway of Dorelle-Moore's home.
>
> Later that morning, Dorelle-Moore's stepfather contacted police to arrange for Dorelle-Moore's surrender. He was charged with murder, and his jury trial commenced on March 14, 2011. At the conclusion of trial, Dorelle-Moore was found guilty as charged. He was sentenced to fifty-five years imprisonment.

*Moore v. State*, No. 45A04-1109-CR-482, slip op. at *2-3 (Ind. Ct. App. May 25, 2012); ECF 4-6.

Moore appealed and on May 25, 2012, the Court of Appeals of Indiana affirmed his conviction and sentence. Id. Moore did not petition for transfer to the Indiana Supreme Court. ECF 1 at 1; ECF 4-2. On February 11, 2013, More filed a petition for post-conviction relief. ECF 4-1 at 11; PCR App. 10-38. On November 20, 2014, the post-conviction court issued findings of fact and conclusions of law denying his petition.

2

PCR App. 86-92. Moore appealed, but on April 30, 2015, the Court of Appeals affirmed the post conviction court. ECF 4-7; 4-8; 4-11. Moore petitioned the Indiana Supreme Court , but on July 23, 2015, the Court denied transfer. ECF 4-12; 4-13; 4-14.

On May 6, 2016, Lockett signed and placed in the prison mailing system his petition for writ of habeas corpus. ECF 1 at 6.

## II. STANDARD FOR HABEAS REVIEW

"Federal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (quotation marks and citation omitted).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> [This] standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state

3

court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Woods,* 135 S.Ct. at 1376 (quotation marks and citations omitted).

Criminal defendants are entitled to a fair trial but not a perfect one. *Rose v. Clark*, 478 U.S. 570, 579 (1986). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation marks omitted).

### III. ANALYSIS

The respondent argues that Moore's petition should be dismissed because it is untimely. Alternatively, the respondent argues one of Moore's claims is procedurally defaulted, and the other, non-defaulted claim, is without merit. Although the petition appears to be untimely[2], the court will nevertheless address each of Moore's claims in turn.

---

[2] It is clear that more than 500 days of countable time passed before Moore signed and submitted his habeas petition. Moore points out that the Indiana State Prison was locked down for two weeks in August 2015 and for three weeks in 2016. ECF 1 at 5. He also notes that his legal materials were inadvertently destroyed in August 2015. *Id.* Despite these events, Moore has not explained how they prevented him from timely filing his petition through the use of due diligence. 28 U.S.C. § 2244(d)(1)(B); *Lloyd v. Van natta*, 296 F.3d 630, 632-33 (7th Cir. 2002); *Chamness v. Hockaday*, 50 Fed. Appx. 321 (7th Cir. 2002); *see e.g. Jackson v. Rednour*, Case No. 10 C 6709, 2011 WL 5980984 (N.D. Ill. Nov. 28, 2011) (collecting cases). Therefore, this petition is seemingly barred by the one-year statute of limitations. 28 U.S.C. § 2244(d)(1)(A).

4

A. Moore's prosecutorial misconduct claim is procedurally defaulted.

Moore seeks habeas relief based on alleged prosecutorial misconduct. Moore claims that during trial the prosecutor informed his desired witness, Willie Lee James, there was an outstanding warrant for his arrest. Moore contends that this amounted to a threat; if he showed up to testify on Moore's behalf, he would be arrested. Ultimately, James did not show up to testify at trial.[3] The respondent argues that this claim is procedurally defaulted. Before considering the merits of a claim, the court must ensure that the petitioner exhausted all available remedies in the state courts. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). Interests of comity require that the state courts be given the first opportunity to address and correct violations of their prisoner's federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). For that opportunity to be meaningful, the petitioner must fairly present his constitutional claim in one complete round of state review, including with the state court of last resort. *Baldwin v. Reese*, 541 U.S. 27, 30-31 (2004); *Boerckel*, 526 U.S. at 845. The companion procedural default doctrine, also rooted in comity concerns, precludes a federal court from reaching the merits of a claim when: (1) the claim was presented to

---

[3] To provide some background: A gun stolen from the burglary of Moore's residence had been recovered when James was arrested for an unspecified offense. ECF 4-6 at 4. Defense counsel wanted to call James as a witness, but he did not show up at trial. On appeal, defense counsel blamed the prosecutor for effectively discouraging James to testify. The prosecutor disputed that she ever told James there was an outstanding warrant for his arrest. Instead, she claimed to have simply asked James whether he had an outstanding warrant, to which he replied that he did not. *Id.* at 5. However, this dispute about what the prosecutor said to James was never resolved since the Court of Appeals of Indiana determined that James's testimony would not have made any difference in the outcome of the trial. *Id.* at 7. Though Moore argued that James's testimony would have been relevant to his claim of self-defense, the court of appeals disagreed and concluded that "any connection between James's procurement of the weapon and [Moore's] assertion of self defense [was] tenuous at best." *Id.* at 7. Thus, the court of appeals held that "any suppression of the witness's testimony amounted to no more than harmless error." *Id.*

5

the state courts and was denied on the basis of an adequate and independent state law procedural ground; or (2) the claim was not presented to the state courts and it is clear those courts would now find the claim procedurally barred under state law. *Coleman v. Thompson*, 501 U.S. 722, 735 (1991).

The state court record demonstrates that Moore did not present this claim to the Indiana Supreme Court. ECF 4-2; ECF 4-12. Moore admits as much. ECF 1 at 4. Consequently, this claim is procedurally defaulted. *Chambers*, 264 F.3d at 737-38. A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008), *cert. denied*, 129 S. Ct. 2382 (2009). A habeas petitioner may also overcome a procedural default by establishing that the court's refusal to consider a defaulted claim on the merits would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman*, 501 U.S. at 750. Under this narrow exception, the petitioner must establish that "a constitutional violation has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). A petitioner who asserts actual innocence "must *demonstrate* innocence; the burden is his, not the state's . . . ." *Buie v. McAdory*, 341 F.3d 623, 626-27 (7th Cir. 2003) (emphasis in original).

It appears as though Moore is trying to argue that error by his appellate counsel should excuse his procedural default. ECF 1 at 4. Moore claims that appellate counsel

6

refused to file the petition for transfer. Attorney error rising to the level of ineffective assistance of counsel can constitute cause to set aside a procedural default. *Coleman*, 501 U.S. at 753-54; *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008). However, the exhaustion doctrine requires that an ineffective assistance claim be presented to the state court as an independent claim before it may be used to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). If the ineffective assistance claim was itself not properly exhausted in state court, "the petitioner will be fully defaulted." *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002). Moore did not raise this ineffective assistance claim in his state post-conviction petition, and it is clear that he did not exhaust such a claim in one complete round of state review. ECF 4-8. Moore is thus "fully defaulted." *Dellinger*, 301 F.3d at 767. Therefore, even if this petition was timely, the court could not reach Moore's procedurally defaulted claim on the merits.

B.  <u>Ineffective assistance of counsel.</u>

Moore also argues that he is entitled to habeas relief because his trial counsel provided ineffective assistance of counsel by failing to impeach the State's witness, Anon Burnett, with the fact that he had a prior conviction for conversion. ECF 1 at 3. To prevail on an ineffective assistance of counsel claim in the State courts, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). The test for prejudice is whether there was a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable

7

probability is a probability "sufficient to undermine confidence in the outcome." *Id*. at 693. In assessing prejudice under *Strickland* "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112. However, "[o]n habeas review, [the] inquiry is now whether the state court unreasonably applied *Strickland* . . . ." *McNary v. Lemke*, 708 F.3d 905, 914 (7th Cir. 2013). "Given this high standard, even 'egregious' failures of counsel do not always warrant relief." *Id.*

The Court of Appeals of Indiana reviewed the facts of the case along with the post-conviction testimony, discussed the proper *Strickland* standard, and concluded that even if trial counsel would have impeached Burnett with his conversion conviction, there was not a reasonable probability that the result of the proceedings would have been different. ECF 4-11 at 11-15. In arriving at this decision, the Court of Appeals of Indiana explained that the impeachment evidence of Burnett's prior conviction for conversion would have been of little value to Moore's defense.

> We have previously held that the importance of impeachment evidence depends on the facts of the particular case. *See Gibson v. State*, 514 N.E.2d 318, 321 (Ind. Ct. App. 1987). In reaching this holding, we have explained that the "importance of such evidence will depend upon the type of impeachment evidence it is, the extent of its impeachment, and the importance of the impeached witness to the State's case. *Id.* (*quoting Deatrick v. State*, 181 Ind. App. 469, 475, 392 N.E.2d 498, 502 (1979)). Considerations appropriate to this determination include: (1) whether the suppressed information was substantially inconsistent with the witness's trial testimony; (2) whether the suppressed information would have refused an element of the offense or whether it would have served only to impeach the general veracity of the witness; (3) whether the witness making the suppressed statement was otherwise impeached; (4) whether the witness's trial testimony regarding elemental facts was corroborated by other witnesses; and (5) whether the defense had access to other pre-

8

trial statements of the witness not claimed to be inconsistent with the suppressed statement. *Id.*

***

Here, the challenged evidence was not inconsistent with Burnett's testimony. It would not have refuted an element of the charged offense but rather would have served only to impeach Burnett's general veracity. Defense counsel chose a different venue, i.e., Burnett's mental health issues, to impeach his credibility. Further, although Burnett's testimony was important to the State's case, his testimony was corroborated by the testimony of other witnesses. As such, we cannot say that there is a reasonable probability, i.e., a probability sufficient to undermine our confidence in the outcome of Moore's trial, that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *See Bunch*, 964 N.E.2d at 297.

ECF 4-11 at 8, 12.

In assessing prejudice under *Strickland*, the appellate court found:

Moore argues that his trial counsel provided ineffective assistance by failing to make a reasonable inquiry into Burnett's criminal history. Specifically, Moore claims that Burnett's statements during his deposition should have put trial counsel on notice of Burnett's prior conversion conviction, that trial counsel should have investigated this prior conviction, and used it to impeach Burnett during trial. For its part, the State asserts that Moore's trial counsel did not provide Moore with ineffective assistance.

Again, we concluded above that Moore failed to prove that there was a reasonable probability that the result of the proceedings would have been different had the evidence been disclosed to the defense. Likewise, given the overwhelming evidence of Moore's guilt, we conclude that Moore also failed to prove that there was a reasonable probability that the result of the proceeding would have been different had defense counsel attempted to impeach Burnett by questioning him about his prior conversion conviction.

Moore does not dispute the fact that he shot Claxton. As is described in detail above, the record demonstrates that multiple witnesses testified that

9

> after hearing gun shots, they observed Moore exit the house while holding
> a gun. In addition, multiple witnesses testified that Moore used callous
> language when speaking to and about Claxton both immediately prior to
> and immediately after Moore shot Claxton.
>
> In light of the overwhelming evidence of Moore's guilt, we conclude that
> Moore has failed to prove that trial counsel's allegedly deficient act of
> failing to attempt to impeach Burnett by questioning him about his prior
> conversion conviction resulted in prejudice to Moore.

Id. at 14-15.

In his petition, Moore complains only about the performance of his trial counsel - for failing to impeach Burnett with his prior conviction. However, the Court of Appeals of Indiana resolved the ineffective assistance claim solely on the prejudice prong, which it was entitled to do. *Strickland*, 466 U.S. at 697; *Watson v. Anglin*, 560 F.3d 687, 689-90 (7th Cir. 2009). Moore has not provided any explanation how counsel's failure constitutes prejudice under *Strickland*. Nor has he explained why he believes the Court of Appeals of Indiana's decision finding no prejudice amounts to an unreasonable adjudication of this case. Because the Court of Appeals accurately stated the *Strickland* standard and did not unreasonably apply it to the facts of this case, this ground is not a basis for habeas relief.

Even further, after reviewing the trial transcript and accompanying State court record, the court finds that the State court's determination was not only reasonable, it was correct. The weight of the evidence against Moore was significant. As the State court correctly noted, it was undisputed that Moore shot Claxton. Moore's attorney conceded as much both in his opening statement and closing argument. Trial Tr. 58,

10

787. It was the defense's theory that Moore shot Claxton out of some sort of overwhelming fear or anger. Trial Tr. 787-88. However, that theory was not supported by the evidence.

At least three witnesses testified that, after hearing gun shots, they saw Moore exit his home holding a gun and then leave the scene. Trial Tr. 107, 149, 430. At trial, Anon Burnett recounted being at Moore's house when Moore shot Claxton. Trial Tr. 539-42. He testified that Claxton was sitting on the couch looking at his phone when Moore walked into the room with a gun and shot Claxton. Id. This testimony was important; it certainly undercut the defense's theory. However, Burnett's testimony did not stand alone. It was corroborated by the testimony of other witnesses who provided evidence that Moore shot Claxton because Moore believed that Claxton robbed his house. Shortly after hearing gun shots, Ashley Gould - who lived five houses away from Moore - called Moore who answered the phone and said "this bitch ass nigger want to steal from me. Now he laying down." Trial Tr. 145. Cassandra Claxton was close enough to Ashley Gould during this phone call to hear Moore. Similar to Ashley, Cassandra recalls hearing Moore say, "since your bitch ass brother want to steal from me, now he down here laying on the ground." Trial Tr. 189.

Additionally, though Burnett's conversion conviction was not introduced at trial, his credibility did not go unblemished before the jury. During the trial, defense counsel pointed out that Burnett suffered from bipolar disorder and had mental health issues. Trial Tr. 559-60. In sum, there is not a reasonable likelihood - and certainly not a

11

substantial one - that further impeaching Burnett with his prior conversion conviction would have called the trial's result into question.[4]

## V.  CERTIFICATE OF APPEALABILITY

Pursuant to Section 2254 Habeas Corpus Rule 11, the court must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons explained in this opinion for denying habeas corpus relief, there is no basis for encouraging Moore to proceed further. Thus, a certificate of appealability must be denied.

## V.  CONCLUSION

Accordingly, the habeas petition is DISMISSED and a certificate of appealability is DENIED.

SO ORDERED on March 21, 2018

/s/ JON E. DEGUILIO
Judge
United States District Court

---

[4] Moore also suggests that the State suppressed Burnett's conviction. However, even construing his petition as raising a *Brady* claim, it would fail for the same reason, as a *Brady* claim likewise requires a "reasonable probability" of a different result. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). The State court correctly articulated that standard and reasonably found that Moore failed to meet it.